**AETNA CASUALTY & SURETY CO. OF ILLINOIS, etc., Plaintiff,**

v.

**The MEDICAL PROTECTIVE COMPANY OF FORT WAYNE, INDIANA, etc., Defendant.**

No. 82 C 1741.

United States District Court, N.D. Illinois, E.D.

Oct. 25, 1983.

Kevin R. Sido, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for plaintiff.

James T. Nyeste, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

**WILLIAM T. HART, District Judge.**

This action is brought by Aetna Casualty & Surety Company of Illinois ("Aetna"), an "excess" liability insurer, against The Medical Protective Company of Fort Wayne, Indiana ("Medpro") the primary liability insurer of a physician specializing in pediatrics. The matter is currently before the Court upon cross motions for summary judgment. Because of the superlative efforts of both parties to narrow the issues presented, the Court has been provided with a comprehensive stipulation of the underlying facts. Those stipulations render this action a proper one for summary disposition.

This dispute among the primary and excess liability insurers arises from a judgment of $1,500,000 entered by an Illinois Circuit Court[1] against the insured pediatrician for medical malpractice. The plaintiff in that malpractice action, Janice Thurston, was stricken with glaucoma and blinded as a result of continuous exposure to a drug prescribed by her pediatrician over a period of two years.

The series of events at issue began on August 1, 1972, when Mrs. Thurston brought her daughter Janice to their pediatrician's office. Janice was suffering from conjunctivitis, an inflammation of the mucous membrane which lines the eyelids and the front portion of the eyeball. On that occasion, the doctor prescribed Neodecadron ointment, to be applied topically to the inside of the eyelid.

Neodecadron contains a steroid which, when used continuously for extended periods, can elevate the pressure within the eyeball (intraocular pressure). Such pressure elevation is called steroid induced glaucoma. Janice Thurston's use of Neodecadron was continuous and extended, resulting in a sharp increase in her intraocular pressure, damage to her optic nerves, and ultimately, blindness.

Janice Thurston returned to see her pediatrician on several occasions after the initial visit of August 1, 1972. Not all of these visits dealt with her recurring conjunctivitis. There was a visit on April 30, 1973, three visits during the summer of 1973, a visit on November 5, 1973 and a final visit on June 27, 1974. During the course of this nearly two year period, six refills of the original Neodecadron prescription were authorized. On no occasion did Janice's pediatrician check her intraocular pressure. Indeed, the stipulated facts indicate that the doctor never reexamined Janice's eyes in any way until the final visit in June of 1974 and failed to properly monitor Janice's usage of Neodecadron. The stipulations indicate that there was little, if any, discussion of her usage of the drug, only a series of refilled prescriptions.

Aetna and Medpro have joined issue over whether this series of events constitutes a single "occurrence" or a series of several "occurrences" within the terms of Medpro's liability insurance contract. Should the events comprise a single "occurrence," Medpro's liability on the policy would be limited to $200,000. However, if they are instead a series of "occurrences," Medpro's liability could rise as high as $1,200,000, the annual policy limit for each of two

1. *Thurston v. Ninio,* Circuit Court of Cook County, Illinois, *No. 75 L 12065.*

years. Aetna's liability as excess insurer would, of course, diminish correspondingly.

■ Whether the events in question are properly characterized as a single "occurrence" or multiple is a question of causation. A series of related injuries comprise a single "occurrence," for the purposes of an insurance contract, where they all flow from a single cause. *See, e.g., Appalachian Ins. Co. v. Liberty Mutual Ins. Co.,* 676 F.2d 56, 61–62 (3d Cir.1982) (series of back-pay awards arising from a single discriminatory company policy constitute a single occurrence). Where each injury results from an independent cause, there are a series of "occurrences." *See, e.g., Liberty Mutual Ins. Co. v. Rawls,* 404 F.2d 880 (5th Cir.1968) (Second collision after driver of vehicle regained control a separate occurrence from first collision). Here; Aetna argues that Janice's pediatrician regained control over the situation each time Janice visited the office. Therefore each prescription was the result of an independent cause.

■ But the stipulated facts indicate that Janice's pediatrician never regained "control" over the situation. Indeed, the theory of malpractice upon which the Thurstons prevailed in state court was that her doctor *failed* to properly control Janice Thurston's usage of Neodecadron. The original diagnosis of Janice's conjunctivitis was never reevaluated. Nor did her doctor ever attempt to discern whether Janice's usage of the drug had exceeded safe levels. During the subsequent series of office visits, many for standard childhood "cuts and bruises," attention was focused only rarely upon Janice's conjunctivitis and her use of Neodecadron. While *opportunities* to regain control may have presented themselves, they were never exercised by a reevaluation of the original diagnosis or the original form of treatment that was prescribed.

Absent some independent evaluation of the prior diagnosis and treatment, the succeeding office visits cannot be regarded as the causes of the prescription refills. To so characterize these events would be to cut short the search for the cause of Janice's injury. There was one diagnosis and one course of treatment prescribed. All prescription refills and all the resulting injuries to Janice Thurston flowed from that single "occurrence" just as surely as the back-pay awards flowed from the single policy of discrimination in *Appalachian Ins. Co.* There, as here, only one decision was made. Any subsequent acts simply implemented that prior decision.

■ Further, the Court notes that Aetna's notion of "injury" is a very troubling aspect of its argument. Underlying Aetna's argument that each office visit was a separate occurrence is an argument that each application of Neodecadron to Janice's eyes resulted in independent, compensable injuries. Accepting this controversial position as true, the Court is still unable to ascertain the *extent* of each of these independent injuries. A trained opthamologist examined Janice on December 20, 1973, after she had applied five of the seven prescribed tubes of Neodecadron. That examination revealed no elevation of intraocular pressure, no damage to the optic nerves. Therefore, even if each office visit were an occurrence that caused some injury to Janice's eyes, there is no proof that the extent of these injuries met or exceeded Medpro's $200,000 per occurrence policy limit. Even if the Court were convinced that there were a series of "occurrences" under the Medpro policy, summary judgment for Aetna would be inappropriate absent proof of the extent of damages resulting from each occurrence.

Since the malpractice award resulted from a single occurrence, as defined in the Medpro insurance policy, Aetna is not entitled to any amount in excess of the $200,000 previously paid by Medpro.

IT IS THEREFORE ORDERED that

(1) Aetna's motion for summary judgment is denied; and

(2) Medpro's motion for summary judgment is granted.