## GIBBS v ARMOVIT

Docket No. 110938. Submitted December 13, 1989, at Lansing. Decided February 21, 1990.

Betty Gibbs and others brought a medical malpractice action against Herminio Armovit in the Lenawee Circuit Court and obtained a judgment of $380,000. The malpractice occurred between 1964 and 1984 and the claims of the other plaintiffs were for loss of consortium. The Medical Protective Company of Fort Wayne, Indiana, issued a malpractice insurance policy to Dr. Armovit each year since 1964. The policies contained a $200,000 per "occurrence" limitation. The Medical Protective Company paid plaintiffs $200,000. Plaintiffs filed a garnishment motion to recover from The Medical Protective Company the balance of the judgment plus interest, alleging that, since the policies were for one year, the company was obligated to provide coverage for each year in which Dr. Armovit committed malpractice. They also claimed that they should recover more than $200,000 because each plaintiff suffered a distinct, compensable loss. The court, John C. Timms, J., denied plaintiffs' motion. Plaintiffs appealed.

The Court of Appeals *held:*

1. The term "occurrence" as used in the insurance policies in question referred to the injury, not to the preceding separate acts of malpractice.

2. The policies clearly and unambiguously limit coverage to $200,000 per suit or claim.

3. Loss of consortium claims by family members are derivative of the injured party's right of recovery and may not be maintained as separate claims under insurance policies.

Affirmed.

1. INSURANCE — JUDICIAL CONSTRUCTION.

Insurance contracts are to be interpreted by reading them as a whole.

REFERENCES

Am Jur 2d, Insurance §§ 275, 726, 1557.

Coverage and exclusions of liability or indemnity policy on physicians, surgeons, and other healers. 33 ALR4th 14.

2. INSURANCE — LOSS OF CONSORTIUM — DERIVATIVE CLAIMS.
    Loss of consortium claims by family members are derivative of
        the injured party's right of recovery and may not be main-
        tained as separate claims under insurance policies.

*Bockoff & Zamler* (by *Lisa A. Welton*), for plaintiffs.

*Potter & Stevens* (by *George E. Potter*), for The Medical Protective Company of Fort Wayne, Indiana.

Before: REILLY, P.J., and CYNAR and T. M. BURNS,* JJ.

PER CURIAM. Plaintiffs appeal as of right from the denial of their motion for enforcement of garnishment against garnishee defendant. We affirm.

In September of 1986, following a jury trial, plaintiffs were awarded a total of $380,000 in damages for a malpractice claim against defendant Herminio Armovit, M.D. Plaintiffs had alleged that Dr. Armovit was negligent in prescribing diet pills to plaintiff Betty Gibbs from 1964 to 1984. Thereafter, garnishee defendant, The Medical Protective Company of Fort Wayne, Indiana, paid plaintiffs $200,000, plus costs and interest, pursuant to a medical malpractice insurance policy issued to Dr. Armovit. This policy, which had been reissued to Dr. Armovit every year since 1964, contained a $200,000 "occurrence" limitation.

In June of 1988, plaintiffs filed the instant garnishment motion, seeking to recover the unpaid balance of the judgment plus interest. Plaintiffs maintained that, because the various policies issued to Dr. Armovit were single year policies, the

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

garnishee defendant was obligated to provide coverage to plaintiffs for each year that Dr. Armovit committed malpractice. Although plaintiffs conceded that this argument was precluded by specific exclusions added to the policies issued after 1975, plaintiffs argued that they were entitled to the additional coverage under the earlier policies. Following a hearing, the trial court denied plaintiffs' motion.

On appeal, plaintiffs reassert that they should be allowed to recover against the $200,000 limit in each year between 1964 and 1975. Plaintiffs argue that each distinct act of malpractice was a separate "occurrence" to which coverage must be extended. We disagree.

In denying plaintiffs' motion for enforcement of garnishment, the trial court relied on two federal cases, *Aetna Casualty & Surety Co of Illinois v Medical Protective Co of Fort Wayne, Indiana,* 575 F Supp 901 (ND Ill, 1983), and an unpublished opinion, *Commercial Union Ins Co v The Medical Protective Co,* Docket No 80-74562 (ED Mich, 1982), aff'd 718 F2d 1098 (CA 6, 1983). These cases hold that the term "occurrence" refers only to the injury, not the separate acts of negligence resulting in the injury, *Commercial Union, supra,* and that a series of related injuries constitute only a single "occurrence." *Aetna Casualty, supra,* p 903. Although we are not bound to follow these cases, we agree with the trial court's assessment that their reasoning is both "cogent and compelling."

We note that insurance contracts are to be interpreted by reading them as a whole. *Allstate Ins Co v Miller,* 175 Mich App 515, 519; 438 NW2d 638 (1989). Thus, in the instant case, we must define the term "occurrence" in reference to the other contractual language contained in the policies at issue. In this regard, the various policies

indicate that garnishee defendant specifically agreed only to pay for *damages* on behalf of Dr. Armovit. This limitation is consistent with an insured's purpose in obtaining malpractice insurance, which is to lessen the burden of liability which might arise from the insured's negligence. Given this emphasis on liability and damages, it would be incongruous, in situations of multiple but related acts of malpractice, to extend coverage to each act of negligence, rather than to the single ascertainable injury. Therefore, we concur with the federal rulings that the term "occurrence" refers to the injury, and not to the preceding separate acts of negligence.

Nor do we accept plaintiffs' assertion that exclusions in the policies issued between 1964 and 1975 are ambiguous, thus necessitating coverage. See *Lamotte v Millers National Ins Co,* 180 Mich App 271, 275; 446 NW2d 632 (1989). The exclusionary language at issue is as follows:

> The company's liability for damages shall not exceed the minimum amount herein stated in any one claim or suit and subject to the same limit for each claim or suit the company's total liability, during one policy year, shall not exceed the maximum amount herein stated.

We conclude that this clause is not ambiguous. Rather, the clause clearly instructs that garnishee defendant will not pay more than $200,000 for any claim or suit, which is the minimum amount under the policy, nor more than $600,000 in any one year, which is the maximum amount, regardless of how many separate claims are filed against Dr. Armovit. Since plaintiffs have filed only one suit against Dr. Armovit, their recovery from garnishee defendant is plainly limited to $200,000.

We also reject plaintiffs' contention that they are entitled to recover more than $200,000 because each plaintiff suffered a distinct, compensable loss. Specifically, plaintiffs argue that their individual claims for loss of consortium with plaintiff Betty Gibbs are separate causes of action which constitute separate "occurrences." However, other panels of this Court have held that the various claims of family members are merely derivative of the injured party's right of recovery, and thus may not be maintained as separate claims under insurance policies. See *DeSot v Auto Club Ins Ass'n,* 174 Mich App 251, 255-256; 435 NW2d 442 (1988); *Auto Club Ins Ass'n v Lanyon,* 142 Mich App 108, 112; 369 NW2d 269 (1985). Although these cases refer to automotive insurance policies, and not malpractice insurance policies, we do not find any reason why a different result should be reached here.

Affirmed.