HARTFORD CASUALTY INSURANCE COMPANY, Plaintiff, v. MEDICAL PROTECTIVE COMPANY OF FORT WAYNE, INDIANA, Defendant and Appellant and Cross-Appellee (Hartford Casualty Insurance Company, Plaintiff-Appellee and Cross-Appellant).

First District (1st Division)    Nos. 1—90—2296, 1—90—2553 cons.

Opinion filed May 23, 1994.—Rehearing denied October 18, 1994.

Cassiday, Schade & Gloor, of Chicago (Rudolf G. Schade, Jr., and Lynn D. Dowd, of counsel), for appellant.

French, Kezelis & Kominiarek, P.C., of Chicago (Richard G. French and Russell P. Veldenz, of counsel), for appellee.

JUSTICE MANNING delivered the opinion of the court:

This declaratory judgment action arises on appeal and cross-appeal from the entry of summary judgment and a money judgment in the amount of $736,811 in favor of plaintiff Hartford Casualty Insurance (Hartford) and against defendant Medical Protective Company of Fort Wayne (MedPro), as well as a denial of Hartford's motion for prejudgment interest. For the reasons which follow, we reverse the trial court's grant of summary judgment and vacate the money judgment.

In 1986, the circuit court of Cook County entered judgment, after a jury verdict, in favor of Rita M. Richter and against Dr. Seymour

Diamond, Diamond Baltes Medical Associates, Ltd., and the Diamond Headache Clinic, Ltd., in the amount of $15,707,535 for negligence in the treatment of Ms. Richter between 1973 and 1978, inclusive. In 1987, the three insurance carriers (Hartford, MedPro and the Illinois State Medical Insurance Exchange or ISMIE), all of which provided coverage for Dr. Diamond and/or the clinic, settled the Richter judgment for $6 million as to Dr. Diamond and the Headache Clinic, discharging each of them from any and all causes of action and claims on account of any and all known and unknown personal injuries resulting from the negligent treatment by Dr. Diamond and the clinic during the years 1973 through 1978.

Subsequently Hartford, having paid under a reservation of rights, filed this declaratory judgment action against MedPro seeking a determination that it is entitled to recover additional monies from MedPro as a result of the settlement. It asserted in its complaint that MedPro should tender an additional $1,200,000 to Hartford for MedPro's alleged *pro rata* share of the settlement. It was Hartford's position that MedPro owed the policy limits of its policy for each period under which MedPro insured the tort defendants.

ISMIE's policies Nos. 203214 and 30699 ran from July 1, 1976, through June 30, 1977; Hartford's policies No. 83—206855 and No. 83—102852 ran from March 15, 1976, through June 30, 1976; and MedPro's policy No. 400642 ran from March 15, 1973, through March 15, 1974. MedPro's policy was renewed the following two years, running successively from March 15, 1974 through March 15, 1975 and from March 15, 1975 through March 15, 1976.

The provisions of MedPro's policy provided, in pertinent part:

"[T]he Company agrees to DEFEND and PAY DAMAGES, in the name and on behalf of the insured or his estate,

A. IN ANY CLAIM FOR DAMAGES, AT ANY TIME FILED, BASED ON PROFESSIONAL SERVICES RENDERED OR WHICH SHOULD HAVE BEEN RENDERED, BY THE INSURED OR ANY OTHER PERSON, IN THE PRACTICE OF THE INSURED'S PROFESSION (INCLUDING INJURY SUSTAINED BY ANY PATIENT OR ANYONE ACCOMPANYING A PATIENT WHILE IN THE INSURED'S OFFICE), DURING THE TERM OF THIS POLICY; EXCEPT this policy does not cover ***.

\* \* \*

The Company's liability for damages shall not exceed the minimum amount herein stated in any one occurrence and subject to the same limit for each occurrence the Company's total liability, during one policy year, shall not exceed the maximum amount herein stated ***."

MedPro contends that the circuit court erroneously granted summary judgment in favor of Hartford. It reasserts, as it did in the trial court, that the subject policies, being renewal policies, are not subject to stacking. MedPro further argues that the Illinois rules on contract construction require the court to interpret an insurance contract based upon the intent of the parties.

We view the issues before the court as whether annually renewed insurance policies are subject to stacking when the occurrence triggering the coverage in question is a continuing one over a period of years and whether prejudgment interest is appropriate where a declaratory judgment action is based upon a written instrument, to wit, an insurance policy.

The trial court, in granting summary judgment for Hartford and against MedPro, determined that the negligent conduct complained of and established by Ms. Richter occurred during periods when each of MedPro's policies was in force and effect. It further determined that because the negligent conduct which was the proximate cause of Ms. Richter's injuries overlapped all MedPro policies, coverage was triggered under each policy. Moreover, the court held that the policy language was ambiguous and did not lend itself to a plain and ordinary meaning.

The court, after granting summary judgment on liability for Hartford, considered the issue of how the liability for the settlement should be apportioned. Hartford's position was that the apportionment analysis should include the $1.4 million paid by ISMIE, notwithstanding that ISMIE was not a party to the instant declaratory action. MedPro contended that based upon the lawsuit filed, only $4.6 million, not the total $6 million, was at issue between Hartford and MedPro, and it urged the court to look to the terms and conditions of the policies which the court had determined were in full force and effect, and apportion the damages accordingly. MedPro asserted that all policies at issue contained language in the "other insurance" clause consistent with each other and which provided for a *pro rata* apportionment, based upon the limits of liability of the policies available. The circuit court adopted the apportionment formula submitted by Hartford and apportioned MedPro's liability to be $736,811.

Finally, on cross-appeal Hartford asserts that the court erred in its denial of prejudgment interest which Hartford requested pursuant to section 2 of the Interest Act (815 ILCS Ann. 205/2 (Michie 1993); Ill. Rev. Stat. 1973, ch. 74, par. 2) for the $736,811 judgment awarded to Hartford.

The precise issue of whether stacking is permissible under the

circumstances of this case appears to be a case of first impression in Illinois. While Illinois courts have addressed the issue of stacking, it has mostly been in the context of automobile uninsured motorist scenarios (*Squire v. Economy Fire & Casualty Co.* (1977), 69 Ill. 2d 167, 370 N.E.2d 1044), or in situations where there were two contemporaneously existing insurance policies in existence for which separate premiums were paid (*Menke v. Country Mutual Insurance Co.* (1980), 78 Ill. 2d 420, 401 N.E.2d 539), or in cases where there existed a primary and an excess insurance policy (*McDonald v. Country Mutual Insurance Co.* (1985), 133 Ill. App. 3d 89, 478 N.E.2d 571). The instant case involves none of these factual circumstances. Rather, we have one policy which was entered into in 1973 for a one-year period, at the conclusion of which the same policy was renewed for another one-year period, and, likewise, at the expiration of that one-year period was once again renewed.

Several other jurisdictions have analyzed this enigmatic problem, including several Federal courts, both trial and appellate. As a matter of fact, the identical language contained in the insurance policy at issue has been analyzed and stacking has been rejected by a myriad of courts. These courts[1] have concluded that it is the single nature of the injured party's claim or the cause of the loss or injury which controls.

In the instant case, the plaintiff in the original action, Rita Richter, filed one lawsuit against defendants Dr. Diamond and the Diamond Headache Clinic for medical negligence. She claimed in her complaint that the doctor failed to treat her properly from 1973 through 1978. Her specific allegations included the claim that the defendants had caused her injury by failing to diagnose a hearing loss in her right ear; failing to test her hearing; and failing to perform adequate neurological examinations between 1973 and 1978. Ms. Richter's claims described a continuous tort. There is nothing in the record which portends to suggest that any one particular visit resulted in a number of specific and different injuries, apart from the one injury alleged in the complaint and which was proven at trial.

MedPro cites numerous decisions which have considered this issue and have interpreted the identical language contained in Med-Pro policies which is at issue in the case at bar. In *Gibbs v. Armovit* (1990), 182 Mich. App. 425, 452 N.W.2d 839, the court rejected the

---

[1]See *Aetna Casualty & Surety Co. v. Medical Protective Co.* (N.D. Ill. 1983), 575 F. Supp. 901; *Appalachian Insurance Co. v. Liberty Mutual Insurance Co.* (3d Cir. 1982), 676 F.2d 56, 61-62; *Liberty Mutual Insurance Co. v. Rawls* (5th Cir. 1968), 404 F.2d 880.

very argument which Hartford raises herein. In *Gibbs* the plaintiffs alleged that Dr. Armovit was negligent in prescribing diet pills to Betty Gibbs over a period of 20 years, and they sought to recover the balance of a judgment from the malpractice insurer, MedPro, the same defendant as in the instant case. Following a jury verdict for plaintiffs against Dr. Armovit, and a payment by MedPro of $200,000 on the judgment, plus costs and interests, plaintiffs filed a garnishment action to recover the remaining $180,000 from MedPro. The policy covering Dr. Armovit was, just as in this case, one policy renewed annually over a period of years. Contained in that policy was a $100,000 "occurrence" limitation. It was the plaintiff's position that, because the various policies issued to Dr. Armovit were single-year policies, the insurer was obligated to provide coverage to plaintiffs for each year that Dr. Armovit committed malpractice. They argued that each distinct act of malpractice was a separate "occurrence" to which coverage must be extended. The *Gibbs* court rejected those arguments. It opined that it was obligated to interpret the insurance contract by reading it as a whole. It interpreted the contract to provide that MedPro specifically agreed only to pay for damages on behalf of the insured. It further construed that to be a limitation and reasoned that such a limitation "is consistent with an insured's purpose in obtaining malpractice insurance, which is to lessen the burden of liability which might arise from the insured's negligence." (*Gibbs*, 182 Mich. App. at 428, 452 N.W.2d at 840.) The court went on to conclude that in light of this emphasis on liability and damages, "it would be incongruous, in situations of multiple but related acts of malpractice, to extend coverage to each act of negligence, rather than to the single ascertainable injury." (*Gibbs*, 182 Mich. App. at 428, 452 N.W.2d at 840.) It agreed with respondent that the term "occurrence" refers to the injury, and not to the preceding separate acts of negligence.

We, too, have examined one of those cases, *Aetna Casualty & Surety Co. v. Medical Protective Co.* (N.D. Ill. 1983), 575 F. Supp. 901, and we likewise find the reasoning therein, while not binding, to be instructive. In *Aetna*, the district court reasoned that the term "occurrence" refers only to the injury, not the separate acts of negligence resulting in the injury, and that a series of related injuries constitute only a single occurrence.

The district court there found that a physician's initial drug prescription and later his failure properly to monitor the use of the drug by the patient, resulting in the patient's blindness, was a single "occurrence" within the terms of the physician's primary insurer's malpractice contract. The drug was initially prescribed on August 1,

1972, and continued until June 27, 1974. During the interim, the patient made periodic office visits. The patient had alleged in her complaint in the underlying State court action that the doctor had failed to reexamine her eyes after the initial examination and had failed properly to monitor her usage of the prescribed drug.

■ The *Gibbs* court, in framing the issue, looked to whether the series of events alleged (and established) in the underlying State court action constituted a single "occurrence" or a series of several "occurrences" under MedPro's liability insurance contract. The court concluded that whether the events would be characterized as a single or multiple occurrence is a question of causation. (*Aetna*, 575 F. Supp. at 903.) Where each of a series of related injuries flows from a single cause, it is a single occurrence. (See *Appalachian Insurance Co. v. Liberty Mutual Insurance Co.*, 676 F.2d at 61-62.) Where each injury has an independent cause, there are a series of "occurrences." See *Liberty Mutual Insurance Co. v. Rawls*, 404 F.2d 880.

Aetna had contended that the physician regained control over the situation every time the injured plaintiff visited the office and consequently each prescription was the result of an independent cause. But the *Aetna* court found otherwise. It reasoned that the theory advanced in the State court and which prevailed there was that the physician never regained control as revealed by the allegation that he had failed to act. He never reevaluated the diagnosis, nor did he reevaluate the form of treatment prescribed. There was one diagnosis, one course of treatment prescribed; the resulting injuries flowed from the single occurrence of failing to act. Additionally, the district court noted that assuming, *arguendo*, each office visit was a separate occurrence, or stated differently that each application of the drug to plaintiff's eyes resulted in independent, compensable injuries, there was no proof of the extent of damages resulting from each such occurrence.

■ So too in the case at bar, the plaintiff in the underlying malpractice action alleged in her complaint that the malpractice defendants had failed to act—had failed to test and diagnose. Nothing in this record separates the alleged acts of omission into separate compensable injuries. In essence, Ms. Richter suffered a hearing loss and paralysis because of the "cause of the loss." Looking to causation, she suffered because no tests or other neurological examinations were performed and as a consequence no proper diagnosis was made. This in turn resulted in inadequate treatment for her medical problems which culminated in the aforementioned injury. We agree with defendant in this declaratory action that one claim, the complaint filed in the trial court, was made; one cause—the continuous

failure to properly treat as a result of malpractice—resulted in the injury, and the single cause resulted in one occurrence—the injury.

We next must determine if the parties intended the coverage to be stacked. While MedPro argues that the intent of the parties controls, Hartford argues that the policy is ambiguous and, hence, the language must be interpreted.

●3 Normally, where a provision of an insurance policy can reasonably be considered as ambiguous, it will be construed in favor of the insured and against the insurer, the drafter of the instrument. (*Dora Township v. Indiana Insurance Co.* (1980), 78 Ill. 2d 376, 400 N.E.2d 921; *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 312 N.E.2d 247.) Conversely, where the provisions of the policy are clear and unambiguous, there is no need for construction and the provisions will be applied as written. (*Menke*, 78 Ill. 2d 420, 401 N.E.2d 539.) In interpreting an insurance contract to determine whether an ambiguity exists, the entire insurance contract must be read together rather than an isolated part. (*Weiss v. Bituminous Casualty Corp.* (1974), 59 Ill. 2d 165, 319 N.E.2d 491.) In applying the rules of interpretation, the words in the policy should be given their plain and ordinary meanings, and the court should not search for an ambiguity where there is none. *United States Fire Insurance Co. v. Schnackenberg* (1981), 88 Ill. 2d 1, 5, 429 N.E.2d 1203.) Where the provisions of the policy are ambiguous, the policy is construed liberally in favor of the insured and against the drafter. *Menke v. Country Mutual Insurance Co.* (1980), 78 Ill. 2d 420, 401 N.E.2d 539.

The policy before this court provides in paragraph A:

"In any claim for damages, at any time filed, based on professional services rendered or which should have been rendered, by the insured or any other person, in the practice of the insured's profession (including injury sustained by any patient or anyone accompanying a patient while in the insured's office), during the term of this policy."

Paragraph E provides:

"The company's liability for damages shall not exceed the minimum amount herein stated in any one occurrence and subject to the same limit for each occurrence the company's total liability, during one policy year, shall not exceed the maximum amount herein stated ***."

And while Hartford concedes that a strict construction of paragraph "E" does provide that MedPro cannot be liable beyond the limits for any one given policy year and that the provision does not carry over to office visits or professional care in another policy year,

it argues that the policy provision does not state that there is a single limit of liability for all policy years while covered by MedPro. It further argues that no language in the policy clearly prohibits accumulating the liability limits for different policy years. Thus, Hartford asserts that the circuit court correctly determined MedPro to be responsible for $200,000 for acts occurring during the policy year March 1973 to March 1974; $1 million for acts occurring during policy year March 1974 to March 1975; and $1 million for acts occurring during policy year March 1975 to March 1976.

Hartford claims that the maximum limits contained in each of the policies issued to Dr. Diamond were all applicable to the Richter action because Dr. Diamond's acts toward Ms. Richter occurred in each of the policy periods. In the absence of language forbidding accumulation of the maximum limits for each policy period, Hartford urges that there exists a right to stack, citing *Squire v. Economy Fire & Casualty Co.* (1973), 69 Ill. 2d 167. However, a review of the holding in *Squire* merits a different conclusion.

In *Squire* the issue presented was whether the parties reasonably contemplated additional insurance benefits when plaintiff's parents paid an additional premium for an endorsement to their existing policy. Plaintiff's parents paid insurance premiums for "Family Protection" (uninsured motorist coverage) for the one automobile with limits of $10,000 for each injured person, up to a total of $20,000 for each accident. Later plaintiff's parents paid an additional $1 premium for "Family Protection" (uninsured motorist coverage) for an additional $10,000 per person, up to $20,000 for each accident for a second family automobile. The defendants maintained that the intention of the parties was set out in the policy, and that the policy limited coverage to $10,000 regardless of the number of vehicles to which the insurance applied. The court disagreed with the defendants' contention, because when an insurer attempts to limit its liability under the uninsured motorist provision of its policy, such limitation must be construed liberally in favor of the policyholder and most strongly against the insurer. (*Squire v. Economy Fire & Casualty Co.*, 69 Ill. 2d at 179, citing *Barnes v. Povell* (1971), 49 Ill. 2d 449, 454, 275 N.E.2d 377.) The court reasoned that had the insurance company intended the additional $1 to provide anything other than an additional $10,000 indemnification, it should have so stated. The court further reasoned that since there are two declaration pages, both setting limits of "$10,000 each per person," the meaning of defendant's limitations is ambiguous in this situation and must be construed in favor of the insured; it is clear the insureds expected to receive something in addition to the coverage they were already paying defendant. The court concluded that the $1 premium purchased

additional indemnification for injuries resulting from the same risks covered under the primary policy and plaintiff may stack the uninsured motorist coverage of her policy and endorsement to recover up to $20,000 as a result of her injuries.

MedPro, however, contends that Richter's allegations presented a classic scenario of a continuous ongoing tort from 1973 through 1978. It posits that in these situations, the insurance analysis has been confined to an examination of whether the underlying negligent omission constituted "one occurrence" and to whether the insured asserted a single claim or lawsuit against the insurer. It argues that where a determination has been made that the insured asserted a single claim, stacking of insurance coverage generally has been precluded under circumstances similar to those at issue.

■ In analyzing a continuing course of negligent conduct as related to an insurance coverage dispute, many jurisdictions have employed the "cause of the loss or damage" test. Illinois has adopted this test. In *Mason v. Home Insurance Co.* (1988), 177 Ill. App. 3d 454, 459, 532 N.E.2d 526, 530, *appeal denied* (1985), 125 Ill. 2d 567, 537 N.E.2d 811, the appellate court held that the term "occurrence" as used in the restaurant's insurance policy referred to the cause of the damages, not the number of claims. The plaintiffs in Mason were patrons of a local restaurant, all of whom consumed tainted food and were subsequently stricken with botulism poisoning. The injured patrons were numerous and each one was served the food only once and on different days from one another. The coverage dispute centered around whether or not their respective claims arose out of a separate occurrence. Factually, one aspect was dissimilar to the case at bar, in that the policy in Mason defined "occurrence." We do not, however, find that factual distinction to be fatal in using the case as guidance.

The *Mason* court relied heavily on decisions in other jurisdictions, most significantly *Michigan Chemical Corp. v. American Home Assurance Co.* (6th Cir. 1984), 728 F.2d 374. The court there stated that where courts over an extended period of time reached virtually the same result in interpreting the term "occurrence," especially when the policy language indicated coverage was to be determined on a "per occurrence" rather than a "per claim" basis, the policy terms admit of only one reasonable interpretation. (*Mason*, 177 Ill. App. 3d at 459, citing *Michigan Chemical Corp.*, 728 F.2d 374.) The *Mason* court (177 Ill. App. 3d at 460) held that the number of occurrences is determined by referring to the cause or causes of the damage rather than to the number of individual claims or injuries.

■ The insureds purchased a specific amount of coverage for which they paid a specifically designated premium. For each policy period the insureds paid a premium for $200,000, $1 million and $1 million, respectively, as renewal of the coverage for two years. Defendant argues that to allow the stacking of these renewal policies would be tantamount to allowing the policies, even after expiration, to continue in effect *ad infinitum* and could be analogized to a "type of cumulative savings account of indemnity."

We agree with defendant. Accordingly, we reject plaintiff's suggestion that the language of the insurance contract is ambiguous. Our reading of the policy language reveals no ambiguity. The intent of the parties is clear and reflects that the parties bargained for one policy which expired at the end of one year and was subsequently renewed successively for two additional terms. We have failed to find authority for the proposition that where there are renewal policies the coverage can be accumulated to cover one occurrence. In view of our conclusion that the insurance coverage cannot be stacked, it is not necessary to address the issues of apportionment of damages or denial of Hartford's motion for prejudgment interest.

Accordingly, for the forgoing reasons, the judgment of the circuit court in granting summary judgment for plaintiff is reversed; and the money judgment is vacated and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed; money judgment vacated and cause remanded.

CAMPBELL, P.J., and O'CONNOR, J., concur.