In the

# United States Court of Appeals
### For the Seventh Circuit

———————————

Nos. 18-3181 & 18-3241

PHILADELPHIA INDEMNITY INSURANCE COMPANY,

*Plaintiff, Counterdefendant-Appellee,*

*v.*

THE CHICAGO TRUST COMPANY, as Administrator of the Estate of Kianna Rudesill, and THE BABY FOLD,

*Defendants, Counterplaintiffs-Appellants.*

———————————

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 16 C 10161 — **Joan Humphrey Lefkow**, *Judge.*

———————————

ARGUED APRIL 16, 2019 — DECIDED JULY 19, 2019

———————————

Before EASTERBROOK, KANNE, and SCUDDER, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. The Baby Fold is a nonprofit corporation that provides foster-care services in Illinois. In 2010 Baby Fold placed three-year-old Kianna Rudesill in the care of Joshua and Heather Lamie. Heather killed Kianna in May 2011 and has been convicted of murder. The Chicago Trust Company, as administrator of Kianna's estate, main-

tained a wrongful death action in Illinois state court against Baby Fold for its failure to supervise and protect Kianna. In February 2019 Chicago Trust and Baby Fold settled their dispute for $4 million.

The question in this case is what portion of the settlement (and any other losses related to Kianna's death) must be paid by Baby Fold's insurer. Philadelphia Indemnity filed this declaratory-judgment suit under the diversity jurisdiction and asked the judge to declare how much it owes under two policies covering Baby Fold at the time of Kianna's death. We refer to the policies as the primary policy and the excess policy. The insurer asked for a declaration that its maximum indemnity is $1 million under the primary policy and $250,000 under the excess policy. Baby Fold and Chicago Trust filed counterclaims: They agree that the primary policy provides $1 million of coverage but contend that the excess policy's limit is $5 million, not $250,000. Philadelphia moved to dismiss Chicago Trust's counterclaim under Fed. R. Civ. P. 12(b)(6). The district judge concluded that the policies' language favors the insurer and granted the motion to dismiss. The opinion declared that Philadelphia's potential liability under the excess policy is $250,000. 2018 U.S. Dist. LEXIS 165071 at *25–26 (N.D. Ill. Sept. 26, 2018).

Unfortunately, the district court entered a judgment that does not declare the parties' rights. Instead the judgment reads: "Case is dismissed." This means that Philadelphia loses (contradicting the judge's opinion) and that the wrong parties have appealed, jeopardizing our appellate jurisdiction. We asked counsel for both sides at oral argument about this incongruity. They surmised that the opinion and judgment, taken together, fully resolve the case in Philadelphia's

favor. That's wrong. A judgment must provide the relief to which a prevailing party is entitled. See, e.g., *Greenhill v. Vartanian*, 917 F.3d 984, 987 (7th Cir. 2019) (collecting authority). This judgment does the opposite, awarding the prevailing party a loss. And Fed. R. Civ. P. 58(a) prohibits an opinion from serving as a declaratory judgment. See *Foremost Sales Promotions, Inc. v. Director, Bureau of Alcohol, Tobacco & Firearms*, 812 F.2d 1044, 1045–46 (7th Cir. 1987).

Counsel also speculated that this document represents a take-nothing judgment for the counterclaims. But this would mean that Philadelphia's claim remains unresolved, and if so the suit is not over. Moreover, this judgment suffers from other problems. It fails to mention one defendant (Chicago Trust). It does not address the counterclaims. And it transgresses Rule 58(b) because it was entered by a clerk. District judges must review all judgments other than simple judgments on jury verdicts and judgments entirely in the defendants' favor. This judgment does not fall under those exceptions and thus requires the district judge's approval. Rule 58(b) requires this judicial inspection to ensure the entry of proper judgments, especially when dispositions are complicated. See *Rush University Medical Center v. Leavitt*, 535 F.3d 735, 737 (7th Cir. 2008). And lawyers must alert judges to problems with judgments. We are disappointed by counsel's failure to adhere to our repeated admonitions on this subject. See, e.g., *Azeez v. Fairman*, 795 F.2d 1296, 1297 (7th Cir. 1986).

We remanded with instructions to enter a new judgment that implements the district judge's opinion, abides by Rule 58, and resolves the whole case. The district judge complied, and the revised judgment provides Philadelphia with the declaratory relief described in the opinion. It also dismisses

the defendants' counterclaims. With the new judgment in hand we turn to the merits.

Chicago Trust and Baby Fold contend that the excess policy provides a $5 million limit, or at least that the language is ambiguous and thus must be construed in favor of more coverage under Illinois law. See, e.g., *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 393 (2005). But the policies' language supports Philadelphia's interpretation.

The primary policy comprises several "coverage parts," each of which outlines specific types of losses. One part covers losses arising out of Baby Fold's negligent supervision of foster parents who commit physical abuse; both sides agree that this part provides $1 million of coverage. The excess policy then provides an additional layer of insurance with a general limit of $5 million. The excess policy, however, contains a sublimit for physical abuse claims:

> **Sexual or Physical Abuse or Molestation Liability Coverage Form Sublimit**
>
> This endorsement modifies insurance provided under the following: COMMERCIAL EXCESS LIABILITY POLICY
>
> This policy is intended to include the Sexual or Physical Abuse or Molestation Coverageform [sic], but only with the limits set forth below. These limits are included within, and not excess of, nor in addition to the Limits of Insurance stated in the Declarations.
>
> SEXUAL OR PHYSICAL ABUSE OR MOLESTATION LIABILITY COVERAGE SUBLIMITS
>
> > Each "Abusive Conduct" Limit 250,000
> >
> > Aggregate Limit 500,000
>
> All other terms and conditions of this Policy remain unchanged.

This means that the excess policy covers physical-abuse claims, but the background limit of $5 million drops to $250,000 for each instance of "abusive conduct", a term that aggregates multiple acts of abuse by multiple persons. (The parties agree that the $500,000 figure is irrelevant.) This is straightforward from the word "sublimit," which must refer to a limit within a limit. If that's not enough, the sublimit is "within, and not excess of, nor in addition to" the excess policy's general limit. What else could this mean?

Defendants' efforts to gin up ambiguity fail. Baby Fold argues that this sublimit restricts the primary policy's coverage, not the excess policy's. How? The sublimit is the fourth page of the excess policy, and its first sentence says that it modifies the excess policy. Baby Fold also asserts that "including" the primary policy's physical abuse part in the excess policy does not limit anything, but instead creates a second source of excess insurance. Even if we ignore the illogic of a sublimit *adding* coverage, Baby Fold misapprehends the structure of the excess policy. It does not cover a variety of loss types like the primary policy; instead, it provides a single layer of additional insurance—one that is reduced by the sublimit.

Chicago Trust suggests that, even if "abusive conduct" occurred, the losses still stem from "bodily injury" caused by an "occurrence", which are broader categories and remain governed by the excess policy's $5 million limit. But this proves too much. This reasoning would render the sublimit (along with every other sublimit and exclusion) ineffective, which is contrary to Illinois law. See, e.g., *Minnesota Mutual Life Insurance Co. v. Link*, 131 Ill. App. 89, 94 (1907); *Old Second National Bank v. Indiana Insurance Co.*, 2015 IL App (1st)

140265 ¶19. Finally, Chicago Trust observes that the insurer could have used alternative ways to substitute the $250,000 sublimit for the $5 million general limit. But the presence of other contractual routes does not render the policy's language ineffectual or ambiguous. This language has one meaning; the ambiguity tiebreaker is irrelevant when the match is a blowout. Cf. *Hall v. Life Insurance Co.*, 317 F.3d 773, 776 (7th Cir. 2003).

Two more points. Philadelphia insured Baby Fold under primary and excess policies in both 2010 and 2011. The consecutive primary policies are identical, as are the excess policies. Chicago Trust contends that the 2010 and 2011 excess policies both supply coverage because Kianna suffered abuse during both years. But Chicago Trust concedes in its opening brief that the limiting language in the primary policy's abuse part prevents more than one primary policy from providing coverage. Given that the excess policy "include[s]" this physical abuse part's very terms, the same limitation must apply to consecutive excess policies. We do not understand how Chicago Trust can seek indemnity under one primary policy and two excess policies when they all contain the same limiting language.

What's more, these policies contain anti-stacking provisions. This language prevents an insured from benefitting from consecutive policies' limits when injuries or losses span multiple periods. The primary policy accomplishes this through the definition of "abusive conduct":

> [E]ach, every and all actual, threatened or alleged acts of physical abuse, sexual abuse, sexual molestation or sexual misconduct committed by, participated in by, directed by, instigated by or knowingly allowed to happen by one or more persons shall be considered to be one "abusive conduct" regardless of:

a. The number of injured parties;

b. The period of time over which the acts of physical abuse, sexual abuse, sexual molestation or sexual misconduct took place; and

c. The number of such acts or encounters.

"Abusive conduct" consisting of or comprising more than one act of physical abuse, sexual abuse, sexual molestation or sexual misconduct shall be deemed to take place, for all purposes within the scope of this policy, at the time of the first such act or encounter.

This language aggregates multiple acts of abuse into one unit and applies the policy in effect when the first act of abuse occurred. So either the 2010 policy or the 2011 policy applies, but not both. The first act cannot occur in both years. And there is more:

The limit of insurance shown in the Declarations for each "abusive conduct" is the most we will pay for all "damages" incurred as the result of any claim of "abusive conduct". Two or more claims for "damages" because of the same incident or interrelated incidents of "abusive conduct" shall be:

a. Considered a single claim. [sic]; and

b. Such claims, whenever made, shall be assigned to only one policy (whether issued by this or any another [sic] insurer) and if that is this policy, only one limit of insurance shall apply.

In other words, only one policy's limit applies to a claim for "abusive conduct", no matter how many instances of abuse occur or how many consecutive policies apply. This exhaustive approach creates long insurance policies, but it also provides an answer in this appeal: insured parties may not stack policies. And the excess policies' inclusion of the primary policies' physical abuse part extends this prohibi-

tion to the excess policies. "[T]here are no 'magic terms' that are required to incorporate another document by reference." *Ward v. Hilliard*, 2018 IL App (5th) 180214 ¶47.

Illinois enforces anti-stacking provisions when multiple policies cover the same loss. See, e.g., *Hobbs v. Hartford Insurance Co.*, 214 Ill. 2d 11, 27 (2005), citing *Grinnell Select Insurance Co. v. Baker*, 362 F.3d 1005 (7th Cir. 2004). And we're confident that the state's highest court would enforce an analogous provision that bars an insured from stacking consecutive one-year policies. In *Great Lakes Dredge & Dock Co. v. Chicago*, 260 F.3d 789, 794 (7th Cir. 2001), we drew an inference from insurance pricing clues and concluded that the relevant policies barred stacking consecutive coverage periods. We also noted that appellate courts in Illinois "make policies' language the benchmark for stacking." *Id*. at 793–94, citing *Missouri Pacific R.R. v. International Insurance Co.*, 288 Ill. App. 3d 69 (1997); *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 283 Ill. App. 3d 630 (1996). See also *Hartford Casualty Insurance Co. v. Medical Protective Co.*, 266 Ill. App. 3d 781 (1994) (concluding that a policy's language barred stacking two one-year renewals on the initial year). Here the policies contain explicit anti-stacking language, making this case easier than *Great Lakes Dredge*. Cf. *Sybron Transition Corp. v. Security Insurance*, 258 F.3d 595, 600–02 (7th Cir. 2001).

Finally, Chicago Trust contends that the district court prematurely declared Philadelphia the prevailing party on the pleadings. We do not see any error. Both policies were attached to Philadelphia's complaint. These provided everything the district judge needed to resolve the dispute under Fed. R. Civ. P. 12(c), despite her failure to mention that rule.

See *United States v. Rogers Cartage Co.*, 794 F.3d 854, 860–61 (7th Cir. 2015); *Smith v. Check-N-Go of Illinois, Inc.*, 200 F.3d 511, 514 (7th Cir. 1999) (noting that a judgment on the pleadings may be affirmed even though the district judge mistakenly cites Rule 12(b)(6)). We reject Chicago Trust's contention that additional materials require consideration.

AFFIRMED