MISSOURI PACIFIC RAILROAD COMPANY, on its own Behalf and as Successor in Interest to Chicago and Eastern Illinois Railroad Company and to Texas and Pacific Railway Company and Their Subsidiary and Affiliated Companies, Plaintiff-Appellee, v. INTERNATIONAL INSURANCE COMPANY, Indiv., and as Successor to International Surplus Lines Insurance Company, North River Insurance Company, and United States Fire Insurance Company, Defendant-Appellant (Admiral Insurance Company *et al.*, Defendants).—MISSOURI PACIFIC RAILROAD COMPANY, on its own Behalf and as Successor in Interest to Chicago and Eastern Illinois Railroad Company and to Texas and Pacific Railway Company and Their Subsidiary and Affiliated Companies, Plaintiff-Appellee, v. FEDERAL INSURANCE COMPANY *et al.*, Defendants-Appellants (Admiral Insurance Company *et al.*, Defendants).—MISSOURI PACIFIC RAILROAD COMPANY, on its own Behalf and as Successor in Interest to Chicago and Eastern Illinois Railroad Company and to Texas and Pacific Railway Company and Their Subsidiary and Affiliated Companies, Plaintiff-Appellee, v. CENTURY INDEMNITY COMPANY, as Successor to Cigna Specialty Insurance Company, f/k/a California Union Insurance Company, and Central National Insurance Company of Omaha, Defendant-Appellant.

Second District   Nos. 2—96—1080 through 2—96—1082 cons.

Opinion filed May 2, 1997.

Edward F. Ruberry, Michael S. Knippen, Thomas M. Ryan, Carlos Del Carpio, and Daniel V. Marsalli, all of Bollinger, Ruberry & Garvey, of Chicago, for appellants International Insurance Company, International Surplus Lines Insurance Company, North River Insurance Company, and United States Fire Insurance Company.

Mark A. Kinzie and J. Patrick Sullivan, both of Stinson, Mag & Fizzell, of Kansas City, Missouri, for appellant Federal Insurance Company.

James J. Berdelle and James R. Branit, both of Bullaro, Carton & Stone, of Chicago, for appellants Commercial Union Insurance Company and C.E. Heath Compensation & Liability Insurance Company.

James T. Ferrini, Susan J. Condon, and Imelda Terrazino, all of Clausen Miller, P.C., of Chicago, and Stuart H. Newberger and Michael J. Zoeller, both of Crowell & Zoeller, of Washington, D.C., for appellants Central National Insurance Company of Omaha and Century Indemnity Company.

David H. Wolfe and Asim S. Raza, both of Wolf & Associates, of Chicago, and Michael D. Gallagher, Jeffrey N. German, and Michael K. Willison, all of German, Gallagher & Murtagh, of Philadelphia, Pennsylvania, for appellant Stonewall Insurance Company.

James R. Schirott and Phillip A. Luetkehans, both of Schirott & Luetkehans, of Itasca, and John H. Mathias, Jr., Stephanie A. Scharf, David M. Kroeger, Christine E. Kessler, and Theodore R. Tetzlaff, all of Jenner & Block, of Chicago, for appellee.

Mark S. Killion, of Stratton & Nardulli, of Springfield, Weston W. Marsh and Paul A. Hybel, both of Freeborn & Peters, Kevin M. Forde, of Kevin M. Forde, Ltd., all of Chicago, Kevin Walsh, of Whitman, Breed, Abbott & Morgan, of New York, New York, and John E. Heintz, of Howrey & Simon, of Washington, D.C., for *amici curiae*.

JUSTICE BOWMAN delivered the opinion of the court:

This appeal involves an insurance coverage dispute between plaintiff, Missouri Pacific Railroad Company (Missouri Pacific), and four of its excess general liability insurance carriers, Commercial Union Insurance Company (Commercial Union), Federal Insurance Company (Federal), International Insurance Company (International), and Century Indemnity Company (Century Indemnity) (collectively, the insurers).

The following facts are taken from the record. Additional relevant facts will be discussed as they relate to the issues on appeal.

Thousands of current and former Missouri Pacific employees have brought claims against Missouri Pacific seeking damages for hearing loss allegedly caused by continuous and repeated on-the-job exposure to unsafe levels of noise. In addition, hundreds of current and former Missouri Pacific employees have brought claims against Missouri Pacific seeking damages for asbestos-related injuries allegedly caused by continuous and repeated exposure to unsafe levels of asbestos over the course of their employment. The underlying claimants' work histories span over 73 years, starting in the 1920s.

Between 1934 and 1986, Missouri Pacific maintained self-insured retentions (SIRs). Missouri Pacific apparently carried no insurance prior to 1934. Between 1957 and 1986, Missouri Pacific purchased certain insurance policies from the insurers (the policies). The total SIRs underlying the policies at issue is over $67 million.

The policies at issue are identical in most respects and warrant the same interpretation. Under the policies, the insurers agreed to indemnify Missouri Pacific for "all sums" caused by an "occurrence":

> "[The Insurer] will indemnify [Missouri Pacific] for all sums which [Missouri Pacific] shall become legally obligated to pay as damages and expenses (all as hereinafter defined as included within the term 'Ultimate Net Loss') because of personal injury or property damage, caused by an occurrence and arising out of operations necessary to the conduct of the business of the Insured."

"All sums" is further defined as "damages" in the "ultimate net loss" provision:

> " 'Ultimate net loss' means the total of all damages and expenses, as defined below, with respect to each occurrence; (a) 'damages' means all sums which [Missouri Pacific] becomes legally obligated to pay as damages, whether by reason of adjudication or settlement, because of personal injury or property damage *** (B) 'expenses' means all reasonable expenses incurred by [Missouri Pacific] in the investigation, settlement, and defense of any claim or suit seeking such damages, including hospital, medical, and funeral charges paid as a consequence of any occurrence hereunder *** and legal expense (including attorney's fees and court costs) ***."

The policies also define the term "occurrence":

> " 'Occurrence' means (a) an accident, or (b) a continuous or repeated exposure to conditions which result in personal injury or property damage which is neither expected nor intended from the stand point of [Missouri Pacific], if such accident or such personal injury or property damage occurs while this policy is in force."

The other relevant provision in the policies is the "Retained Limit—Other Insurance" clause:

> "*Retained Limit—Other Insurance.* Underwriters shall be liable only for that amount of ultimate net loss resulting from any one occurrence which is in excess of
>
> (A) the amount stated in the Schedule as the 'Retained Limit', or
>
> (B) the amount of the applicable limit or limits of liability of other insurance against liability as insured hereby carried by the Assured or on its behalf, if the amount of such limit or limits or the aggregate thereof is greater than the applicable retained limit."

Missouri Pacific filed a declaratory judgment and contract action against the insurers. Missouri Pacific sought a declaration that it was entitled to indemnification from the insurers for the noise-induced-hearing-loss (NIHL) and asbestos-exposure claims brought against it. Missouri Pacific alleged that the NIHL claims and asbestos-exposure claims each arose from one proximate, uninterrupted, and continuing cause. Missouri Pacific alleged that some amount of damage occurred in each policy between 1957 and 1986; thus, it was entitled to select the policy period that would provide full indemnification for "all sums" incurred as a result of the claims. Missouri Pacific also alleged that reimbursement of the claims was subject to the payment of only one SIR per claim type. Missouri Pacific alleged that it paid over $79 million in connection with the NIHL claims and $7.2 million in connection with the asbestos-exposure claims.

On April 29, 1996, Missouri Pacific moved for summary judgment asserting, *inter alia*, that the NIHL claims and asbestos-exposure claims each arose from a single occurrence for purposes of insurance coverage and thus that it need satisfy only one SIR prior to seeking reimbursement for each claim type. Missouri Pacific also moved for summary judgment on the basis that the insurers were fully liable (up to the policies' limits of liability) for "all sums" incurred as indemnity in defense costs arising from the underlying NIHL and asbestos-exposure claims. The insurers' response to Missouri Pacific's motion for summary judgment was twofold. First, they argued that the NIHL claims could be allocated with a reasonable degree of scientific certainty; as a result, the policies were only responsible for the amount of hearing loss that occurred during the particular policy period. Second, they argued that, even if Missouri Pacific could not demonstrate with scientific certainty the amount of damage in each policy period, a *pro rata*, time-on-the-risk allocation method was proper because it was the only approach consistent with the language in the policies and Illinois law.

The insurers also moved for summary judgment on the ground that Missouri Pacific could not implicate the policies unless Missouri Pacific exhausted all applicable SIRs. The insurers maintained that horizontal exhaustion was appropriate when the policyholder was in effect self-insured over several policy periods. In response, Missouri Pacific argued that self insurance did not constitute "other insurance" and, therefore, that the principles of horizontal exhaustion did not apply.

On July 18, 1996, the trial court granted Missouri Pacific's motion for summary judgment. The court found as a matter of law that all NIHL claims arose from a single occurrence; that all asbestos-exposure claims arose from a single occurrence, and that Missouri Pacific must only satisfy one SIR for each occurrence. The trial court also declared that the policies were fully liable for the entire loss subject only to the policies' limits of liability.

The trial court also denied the insurers' motions for summary judgment. The court found that SIRs were not the equivalent of primary insurance coverage or "other insurance" and, thus, that horizontal exhaustion principles did not apply.

On July 26, 1996, this court issued its decision in *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 283 Ill. App. 3d 630 (1996). On August 5, 1996, the insurers filed a motion for clarification and, in the alternative, for reconsideration of the trial court's July 18, 1996, rulings. The insurers sought clarification of the court's determination of the appropriate method of allocation. The insurers also asked the court to reconsider its ruling in light of our decision in *Outboard Marine*. Based on their reading of *Outboard Marine*, the insurers maintained that the trial court should apply a *pro rata*, time-on-the-risk allocation method.

On August 12, 1996, the trial court denied the motion for clarification and reconsideration and entered a written order which granted Missouri Pacific's motion for summary judgment on the "occurrence" and "all sums" issues and denied the insurers' motions for summary judgment based on horizontal exhaustion. However, the court certified two questions relating to the "all sums" and horizontal exhaustion issues pursuant to Supreme Court Rule 308(a) (155 Ill. 2d R. 308(a)). Defendants filed separate applications for leave to appeal to this court pursuant to Supreme Court Rule 308(b) (155 Ill. 2d R. 308(b)). We granted the applications and consolidated all appeals.

## Discussion

The two questions certified by the trial court are:

"1. Whether the 'all sums' rule set forth by the Illinois Supreme

Court in *Zurich Ins. Co. v. Raymark Industries, Inc.*, 118 Ill. 2d 23 (1987) or the pro-rata by time-on-the-risk theory articulated in *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, No. 2—95—0950 (Ill. App. 2d Dist. July 26, 1996) governs allocation of coverage where the Circuit Court has found that noise-induced hearing loss claims constitute a single occurrence, and further has found that asbestos-exposure claims constitute a single occurrence, and

2. Whether the insured must exhaust all self-insured retention amounts for each period of insurance coverage before looking to the insurer for coverage where the noise-induced hearing loss claims and the asbestos-exposure claims span several different periods of coverage with different self-insured retention amounts."

■ Procedurally, these questions originate from both the denial and grant of the parties' respective motions for summary judgment. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party's right to judgment is clear and free from doubt. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113 (1995). All evidence is construed in the light most favorable to the nonmoving party and strictly against the moving party. *Letsos v. Century 21-New West Realty*, 285 Ill. App. 3d 1056, 1062 (1996). In cases involving summary judgment, we conduct a *de novo* review of the evidence in the record. *Espinoza*, 165 Ill. 2d at 113. With this in mind, we now turn to the questions before this court.

I

The first question we must address is whether the "all-sums" allocation rule in *Zurich Insurance Co. v. Raymark Industries, Inc.*, 118 Ill. 2d 23 (1987), or the *pro rata*, time-on-the-risk theory articulated in *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 283 Ill. App. 3d 630 (1996), governs the allocation of coverage in the present case. In doing so, we are to accept the trial court's finding that the NIHL and asbestos-exposure claims each constitute a single occurrence.

The trial court granted Missouri Pacific's motion for summary judgment on this question. Relying on *Zurich*, 118 Ill. 2d 23, the court ruled that the insurers were liable for all sums, up to the limits of their individual policies, for all injuries related to each occurrence that were triggered during the relevant policy period.

The policies state:

"[The Insurer] will indemnify [Missouri Pacific] for all sums which [Missouri Pacific] shall become legally obligated to pay as damages and expenses (all as hereinafter defined as included within the term 'Ultimate Net Loss') because of personal injury or prop-

erty damage, *caused by an occurrence* and arising out of operations necessary to the conduct of the business of the Insured." (Emphasis added.)

The policies also define the term "occurrence":

" 'Occurrence' means (a) an accident, or (b) a continuous or repeated exposure to conditions which result in personal injury or property damage which is neither expected nor intended from the stand point of [Missouri Pacific], *if such accident or such personal injury or property damage occurs while this policy is in force.*" (Emphasis added.)

The insurers argue that the foregoing provisions promise to indemnify Missouri Pacific for all sums arising from personal injuries that occur during the policy period. According to the insurers, a genuine issue of material fact exists regarding whether NIHL can be measured and allocated to particular policy periods and, thus, whether Missouri Pacific's damages can be allocated among the insurers. The insurers therefore argue that the trial court erred in holding that they were liable for all sums, up to the limits of their individual policies, for all injuries related to each occurrence that were triggered during the relevant policy period. The insurers further argue that, in the event that Missouri Pacific's total NIHL damages cannot be allocated to specific policy periods, then the trial court should apply the *pro rata*, time-on-the-risk allocation method adopted in *Outboard Marine*.

In response, Missouri Pacific argues that, under the "all sums" provisions of the policies, each insurer is fully liable for Missouri Pacific's losses without proration. According to Missouri Pacific, the insurers must indemnify it, up to each triggered policy's limit of liability, for "all sums" of damages which it becomes obligated to pay because of NIHL or asbestos injury caused by an occurrence. Missouri Pacific urges this court to impose joint and several liability on the insurers, regardless of the specific policy periods during which the insurers actually provided coverage.

■ The construction of an insurance policy's provisions is a question of law. *Outboard Marine*, 283 Ill. App. 3d at 649. To ascertain the meaning of the policy's words and the intent of the parties, the court must construe the policy as a whole with due regard to the risk undertaken, the subject matter that is insured, and the purposes of the entire policy. *Outboard Marine*, 283 Ill. App. 3d at 649; see *Western Casualty & Surety Co. v. Brochu*, 105 Ill. 2d 486, 493 (1985). The terms of an insurance policy must be read according to their plain and ordinary meaning, and a court should not search for an ambiguity where there is none. *Allstate Insurance Co. v. Smiley*, 276

Ill. App. 3d 971, 977 (1995). If the words in a policy are susceptible to more than one reasonable interpretation, they are ambiguous and will be construed in favor of the insured and against the insurer that drafted the policy. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 74 (1991).

■ Applying these principles to the case at bar, we conclude that the policies only indemnify Missouri Pacific for personal injuries that occur during the policy period. The insurers agreed to indemnify Missouri Pacific "for all sums which [Missouri Pacific] shall become legally obligated to pay as damages and expenses *** because of personal injury *** caused by an occurrence." An occurrence is "an accident, or *** a continuous or repeated exposure to conditions which result in personal injury *** *if such accident or such personal injury *** occurs while this policy is in force.*" (Emphasis added.) We read this language as providing that the sums the insurers are obligated to pay must be on account of personal injuries that occur during the policy period.

Missouri Pacific would have us read the policies as requiring the insurers to indemnify it for all NIHL damages, regardless of when the damages occurred. This reading, however, fails to give effect to the plain and ordinary meaning of the policies' language when read in context. By focusing on the "all sums" language, Missouri Pacific ignores the limitation that the sums the insurers agreed to pay must be on account of personal injuries arising from an *occurrence*, which is defined as an accident or personal injury which occurs while the policy is in force.

Our recent decision in *Outboard Marine* is instructive on this point. In that case, we construed policy language similar to the language in this case. Like Missouri Pacific, the insured in that case argued that the insurers agreed to pay "all sums," regardless of when the injuries occurred. As in this case, we disagreed with the insured and held that "the sums the insurer is obligated to pay must be on account of property damage arising out of an occurrence during the policy period." See *Outboard Marine*, 283 Ill. App. 3d at 642.

Given that the policies provide that the sums the insurers are obligated to pay must be on account of personal injuries that occur during the policy period, the question becomes whether the NIHL damages can be allocated to particular policy periods. At this stage of the litigation, we believe it is premature for us to decide whether they can or cannot. We agree with the insurers that a genuine issue of material fact exists as to whether Missouri Pacific's NIHL damages can be measured and allocated to specific time periods within a reasonable degree of scientific certainty. For instance, in its memoran-

dum in opposition to Missouri Pacific's motion for summary judgment, International submitted the affidavit of Dr. William Clark, who stated that NIHL occurs only during active exposure to excessive noise in the workplace. In the same memorandum, International attached the expert witness disclosure statement of Dr. Robert Dobie, who stated that NIHL injuries can be measured to specific periods of time. Also, in their motion for clarification and, in the alternative, for reconsideration of the trial court's ruling granting Missouri Pacific's motion for summary judgment, the insurers repeated that NIHL damages could be apportioned among policy periods, and they directed the court's attention to the expert witnesses who would testify as such. In that same motion, the insurers also attached the American National Standard Institute's model upon which the allocation of NIHL is based. Collectively, this evidence creates a genuine issue of material fact as to whether NIHL damages can be measured and allocated to specific periods of time.

Parenthetically, we note and dismiss as meritless Missouri Pacific's argument that evidence concerning the allocation of NIHL damages to particular policy periods was never presented to the trial court. Our review of the record, as explained in the preceding paragraph, reveals that this evidence was before the trial court when it made its rulings and is currently part of the record on appeal.

We therefore hold that the trial court erred in granting Missouri Pacific summary judgment on the issue of allocation, and we remand the matter for proceedings consistent with the decision we reach today. On remand, the parties should be given the opportunity to present evidence that NIHL may (or may not) be measured and allocated, within a reasonable degree of medical and scientific certainty, to particular policy periods.

In the event that NIHL cannot be measured and allocated to particular policy periods, the trial court should apply the *pro rata*, time-on-the-risk allocation of damages approach used in *Outboard Marine*. See *Outboard Marine*, 283 Ill. App. 3d at 645. In *Outboard Marine*, the insured maintained excess insurance policies that contained language nearly identical to that in the present case. The trial court found that a single continuous occurrence—the insured's contamination of a lake over a 23-year period—resulted in an unallocable loss that implicated successive policy periods. We held that in such a situation the best method of damage allocation is a *pro rata*, time-on-the-risk allocation. See *Outboard Marine*, 283 Ill. App. 3d at 642-45.

Similarly, this case involves a single continuous occurrence, which may result in an unallocable loss implicating successive policy periods. If it is determined on remand that the NIHL damages are

unallocable, then the best method of damage allocation, as in *Outboard Marine*, is a *pro rata*, time-on-the-risk allocation. *Outboard Marine*, 283 Ill. App. 3d at 643-45.

Moreover, we note that Missouri Pacific's reliance on *Zurich*, 118 Ill. 2d 23, is misplaced. In *Zurich*, the court applied a "triple trigger" theory to determine which primary insurance policies were implicated by asbestos-related personal injuries. The court held that such policies were triggered at the initial exposure, when the disease manifested itself, and at any interim time when the claimant manifested some sickness. *Zurich*, 118 Ill. 2d at 44; see *Outboard Marine*, 283 Ill. App. 3d at 641. The insurer then urged the court to adopt the *pro rata* approach in *Insurance Co. of North America v. Forty-Eight Insulations, Inc.*, 633 F.2d 1212 (6th Cir. 1980), *aff'd on reh'g*, 657 F.2d 814 (6th Cir. 1981), to allocate the indemnity and defense costs of each claim among the triggered policies. In *Forty-Eight Insulations*:

> "[T]he court held that the insurers' obligations under their respective policies were triggered only by a claimant's exposure to asbestos during a policy period. From this premise, that court concluded that the exposure theory provided a reasonable means of allocating the costs of defense and indemnification among the triggered policies based on the number of years of exposure." *Zurich*, 118 Ill. 2d at 57.

However, the court in *Zurich* had already held that a policy was triggered if the claimant suffered bodily injury or sickness or disease. Accordingly, having rejected the premise underlying the *pro rata* allocation approach in *Forty-Eight Insulations*, *Zurich* concluded that the appellate court did not err "insofar as it declined to order the *pro rata* allocation of defense and indemnity obligations among the triggered policies." *Zurich*, 118 Ill. 2d at 57.

We read nothing in *Zurich* as precluding the application of the *pro rata*, time-on-the-risk allocation method announced in *Outboard Marine* to the case at bar. *Zurich*'s rejection of a *pro rata* approach was based on the narrow facts of the case before it, namely, that it had rejected the trigger analysis set forth in *Forty-Eight Insulations*. The court did not adopt a general rule forever precluding the application of a *pro rata* approach. As we explained in *Outboard Marine*, such an approach is appropriate where, as here, a single continuous occurrence results in an unallocable loss implicating successive policy periods.

Our answer, then, to the first certified question is twofold. First, the parties should be given the opportunity to present evidence that NIHL may (or may not) be measured and allocated, within a reason-

able degree of medical and scientific certainty, to particular policy periods. If NIHL cannot be allocated, then the court should apply the *pro rata*, time-on-the-risk allocation method adopted in *Outboard Marine*.

Finally, we add that the parties' arguments regarding the first certified question almost exclusively focused on the NIHL claims. Our consideration of the first question tracts this approach. However, our reasoning applies equally to the NIHL claims and the asbestos-exposure claims.

## II

The second question we must address is whether Missouri Pacific must exhaust all its SIRs for each period of insurance coverage before looking to the insurers for coverage, where the NIHL claims and the asbestos-exposure claims span several different periods of coverage with different SIR amounts. This question has its origins in the insurers' motions for summary judgment, wherein the insurers asserted that Missouri Pacific could not implicate the policies until it exhausted all SIRs. The trial court denied the motions. Relying on *USX Corp. v. Liberty Mutual Insurance Co.*, 269 Ill. App. 3d 233 (1994), the court reasoned that Missouri Pacific's SIRs did not equal "other insurance" and, thus, that the principles of horizontal exhaustion did not apply. The court accordingly held that Missouri Pacific must exhaust only one SIR per occurrence.

The insurers maintain that the trial court erred in denying their motions for summary judgment. Relying principally on *United States Gypsum Co. v. Admiral Insurance Co.*, 268 Ill. App. 3d 598 (1994), they assert that Missouri Pacific must horizontally exhaust all available underlying coverage, including SIRs, before it may look to coverage under the policies. The insurers base their argument on two general grounds: (1) the distinct and unique nature of excess insurance coverage; and (2) the plain language of the policies. According to the insurers, each ground constitutes an independent basis on which to apply the principles of horizontal exhaustion.

## A

The insurers first argue that the principles of horizontal exhaustion apply because of the distinct and unique nature of excess insurance coverage. According to the insurers, horizontal exhaustion applies in all cases in which the insured maintains excess insurance, and it is irrelevant if the underlying coverage is primary insurance, fronting policies, or SIRs. The insurers reason that to hold otherwise would blur the distinction between primary and excess coverage and permit policyholders like Missouri Pacific to manipulate the source of their recovery.

■ This court recently explained the nature of excess coverage in *Outboard Marine*:

> " 'Excess or secondary coverage is coverage whereby, under the terms of the policy, liability attaches only after a *predetermined* amount of primary coverage has been exhausted. A second insurer thus greatly reduces his risk of loss. This reduced risk is reflected in the cost of the policy.' " (Emphasis in original.) *Outboard Marine*, 283 Ill. App. 3d at 652, quoting *Whitehead v. Fleet Towing Co.*, 110 Ill. App. 3d 759, 764 (1982).

Under Illinois law, all underlying coverage must be exhausted before excess coverage may be reached. *United States Gypsum Co.*, 268 Ill. App. 3d at 653-54; *Illinois Emcasco Insurance Co. v. Continental Casualty Co.*, 139 Ill. App. 3d 130, 133 (1985). This principle, commonly referred to as "horizontal exhaustion," is required because excess coverage carries a smaller premium than primary coverage due to the lesser risk insured. *Illinois Emcasco Insurance Co.*, 139 Ill. App. 3d at 133.

In *United States Gypsum Co.*, 268 Ill. App. 3d 598, Gypsum filed a declaratory judgment action seeking coverage for asbestos claims under 35 years of excess insurance policies. At issue was whether Gypsum was required to exhaust all available primary coverage before seeking coverage from any policy that provided excess coverage to any particular primary policy that was triggered. Some of this primary coverage included fronting policies, which effectively rendered Gypsum self-insured over several excess policy periods. *United States Gypsum*, 268 Ill. App. 3d at 651-52. Because Gypsum was effectively self-insured over several excess policy periods, the court stated that "the decision on the primary exhaustion issue will determine whether Gypsum will have to absorb only the amount of one triggered policy period before seeking excess coverage or whether it must absorb multiple periods, *i.e.*, exhaust all triggered primary insurance, before seeking coverage." *United States Gypsum*, 268 Ill. App. 3d at 652.

The court held that Gypsum was required to exhaust all applicable underlying coverage, including the fronting policies, before reaching any excess insurance. The court observed that Gypsum was attempting to manipulate its coverage to "avoid absorbing the cost resulting from its position as a self-insurer." *United States Gypsum*, 268 Ill. App. 3d at 653. The court refused to permit Gypsum to do so:

> "Adopting Gypsum's position permitting 'vertical exhaustion' would allow Gypsum to effectively manipulate the source of its recovery, avoiding difficulties encountered as the result of its purchase of fronting insurance and the liquidation of some of its

insurers. This would permit Gypsum to pursue coverage from certain excess insurers at the exclusion of others. Such a practice would blur the distinction between primary and excess insurance (see *Illinois Emcasco Insurance Co.*, 139 Ill. App. 3d at 133), and would allow certain primary insurers to escape unscathed when they would otherwise bear the initial burden of providing indemnification." *United States Gypsum*, 268 Ill. App. 3d at 654.

Our decision in *Outboard Marine* accords with the reasoning in *United States Gypsum*. In *Outboard Marine*, we rejected the policyholder's claim that it was not responsible for any damages for the periods in which it carried no insurance. We explained:

" ' "A firm that fails to purchase insurance for a period *** is self-insuring for all the risk incurred in that period; otherwise it would be receiving coverage for a period for which it paid no premium. Self-insurance is called 'going bare' for a reason." [Citation.] Or as stated by Judge Wald in her concurring opinion in *Keene*, supra, "I just do not understand why an asbestos manufacturer, which has consciously decided not to insure itself during particular years of the exposure-manifestation period, should have a reasonable expectation that it would be exempt from any liability for injuries that were occurring during the uninsured period." [Citations.]' " *Outboard Marine*, 283 Ill. App. 3d at 643-44, quoting *IMCERA Group, Inc. v. Liberty Mutual Insurance Co.*, 42 Cal. App. 4th 1754, 1792, 50 Cal. Rptr. 2d 583, 607 (1996).

Relying on *United States Gypsum*, we concluded that "[the policy-holder] cannot shift its responsibility for uninsured years to its excess carriers." *Outboard Marine*, 283 Ill. App. 3d at 642.

■ Both *United States Gypsum* and *Outboard Marine* support the proposition that the SIRs constitute primary coverage and thus that Missouri Pacific must exhaust the SIRs before looking to the insurers for coverage. Like the fronting insurance in *United States Gypsum*, which effectively constituted self-insurance, and the period of no in-surance in *Outboard Marine*, which is the equivalent of self-insurance, the SIRs in the present case constitute primary coverage. To hold otherwise would allow Missouri Pacific to manipulate the source of its recovery and avoid the consequences of its decision to become self-insured, conduct we found unacceptable in *United States Gypsum* and *Outboard Marine*. As such, Missouri Pacific must exhaust the SIRs before looking to the insurers for coverage. See *United States Gypsum*, 268 Ill. App. 3d at 653-54.

## B

■ The insurers next argue that the principles of horizontal exhaustion apply because of the plain language of the policies. The

insurers posit that the "other insurance" provisions of the policies require that Missouri Pacific exhaust all primary insurance policies, regardless of whether the policies extend over multiple policy periods. The insurers urge us to construe such policies as encompassing SIRs. Missouri Pacific argues, and the trial court agreed, that SIRs operate as deductibles and are not "other insurance" within the meaning of the policies.

The policies contain the following provision, which is typically referred to as an "other insurance" provision:

> "*Retained Limit—Other Insurance.* Underwriters shall be liable only for that amount of ultimate net loss resulting from any one occurrence which is in excess of
>
> (A) the amount stated in the Schedule as the 'Retained Limit', or
>
> (B) the amount of the applicable limit or limits of liability of *other insurance* against liability as insured hereby carried by the Assured or on its behalf, if the amount of such limit or limits or the aggregate thereof is greater than the applicable retained limit." (Emphasis added.)

Most of the policies also contain the following provision, or one substantially similar to it:

> "It is a condition precedent to coverage granted by this policy that in any instance in which the insured shall choose to self insure the amount of the retained limit or the underlying policy limits, the assured, as self-insurer has the same duties and obligations to underwriters on this policy as an underlying or primary insurer has to excess insureds under the standard ISO policy forms, even though this insurance is not on a standard ISO form."

The policies provide, therefore, that Missouri Pacific is required to exhaust other available insurance coverage before the insurers are required to contribute. The issue, therefore, is whether SIRs constitute "other insurance."

In *United States Gypsum*, the court held that horizontal exhaustion was required because of the "other insurance" provision contained in the excess policies. See *United States Gypsum*, 268 Ill. App. 3d at 654. The court noted that the provision clearly set forth the policy's status as an excess policy "to all triggered primary policies, regardless of whether they extend over multiple policy periods or only one." *United States Gypsum*, 268 Ill. App. 3d at 653. The court then concluded that liability under an excess policy would not attach until all underlying coverage was exhausted. *United States Gypsum*, 268 Ill. App. 3d at 653-54. This underlying coverage included Gypsum's fronting insurance, which the court noted was the equivalent of self-insurance. *United States Gypsum*, 268 Ill. App. 3d at 652-53.

In light of *United States Gypsum*, we conclude that Missouri Pacific is required to exhaust one SIR per occurrence per policy period. For all practical purposes, Missouri Pacific's SIRs are the equivalent of the fronting insurance involved in *Gypsum*. As such, the "other insurance" provision in the policies requires Missouri Pacific to exhaust all underlying coverage, including its SIRs, before it can seek coverage under the policies. See *United States Gypsum*, 268 Ill. App. 3d at 652-54.

Moreover, we briefly note that Missouri Pacific's reliance on *USX Corp. v. Liberty Mutual Insurance Co.*, 269 Ill. App. 3d 233 (1994), for the proposition that SIRs are not "other insurance," is misplaced. *USX* did not address the issue of horizontal exhaustion, and it did not concern an "other insurance" provision that specifically included SIRs.

In summary, we answer the second certified question as follows: Missouri Pacific must horizontally exhaust a full SIR per occurrence per policy period before it may look to coverage under the policies.

■ There is one final matter we must address. Commercial Union also argues that it was entitled to summary judgment because there is no justiciable controversy between it and Missouri Pacific. Commercial Union argues that the largest possible amount of alleged damages Missouri Pacific seeks to apply to the policy period of the policy issued by Commercial Union is an amount lower than the inception point of the Commercial Union policy. According to Commercial Union, therefore, its policy can never be reached.

We decline to address this argument. This appeal comes before us pursuant to Rule 308. Under Rule 308, the trial court certifies certain questions to be answered by this court. We are restricted in our review of Rule 308 appeals to the question certified (*Lewis v. Norfolk & Western Ry. Co.*, 269 Ill. App. 3d 483, 487 (1995)), and we should not expand upon the certified question to answer other issues the trial court might have included (*McMichael v. Michael Reese Health Plan Foundation*, 259 Ill. App. 3d 113, 116 (1994)). Here, the parties' motions for summary judgment addressed a variety of issues, including the issues of single occurrence, all sums, horizontal exhaustion, and Commercial Union's justiciability argument. The trial court only certified questions relating to the issues of all sums and horizontal exhaustion. We therefore decline to address the issue of justiciability, given that it is not our position to expand the scope of the certified questions to answer other issues that might have been included. See *McMichael*, 259 Ill. App. 3d at 116. Of course, if our resolution of the questions posed to us today affects the trial court's prior ruling on the issue of justiciability (or, for that matter, on any issue in the

case), then the parties may ask the trial court to reconsider its prior ruling.

## Conclusion

The questions have been answered, and the cause is remanded for further proceedings consistent with this decision.

Questions answered; cause remanded.

INGLIS and RATHJE, JJ., concur.