# Illinois Official Reports

## Appellate Court

---

> ### *Lamorak Insurance Co. v. Kone, Inc.*, 2018 IL App (1st) 163398

---

| | |
|---|---|
| Appellate Court Caption | LAMORAK INSURANCE COMPANY, f/k/a Commercial Union Insurance Company, f/k/a Employers Commercial Union Insurance Company, Plaintiff and Counterdefendant-Appellant, v. KONE, INC., and LIBERTY MUTUAL INSURANCE COMPANY, Defendants and Counterplaintiffs-Appellees. |
| District & No. | First District, Second Division<br>Docket No. 1-16-3398 |
| Filed<br>Rehearing denied | May 15, 2018<br>November 1, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CH-42887; the Hon. Rodolfo Garcia, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Clyde & Co US LLP, of Chicago (Eileen King Bower, James J. Sanders, and Meghan C. Dalton, of counsel), for appellant.<br><br>Molzahn, Reed, Rouse & Berger, LLC, of Chicago (Timothy J. Reed and Jennifer R. Beegle, of counsel), and Ansa Assuncao LLP, of East Brunswick, New Jersey (Steven F. Gooby and Kenneth Burden, of counsel), for appellee Kone, Inc. |

Schiff Hardin LLP, of Chicago (Everett J. Cygal, Catherine M. Masters, and David Pi, of counsel), for other appellee.

Panel        PRESIDING JUSTICE NEVILLE delivered the judgment of the court, with opinion.
Justices Pucinski and Mason concurred in the judgment and opinion.

**OPINION**

¶ 1      When a former employee sued Kone, Inc. (Kone), for injuries suffered due to long-term exposure to asbestos, Kone notified all the insurance companies that sold policies to Kone during the employee's long tenure. One of the insurers, Lamorak Insurance Company (Lamorak), argued that the policies it sold to Kone for the years 1977 to 1985 counted as excess insurance because Kone had agreed to a self-insured retention (SIR) instead of a deductible for those years. Kone filed a counterclaim that included a request for a judgment declaring that Lamorak's policies provided primary coverage. The circuit court granted Kone's motion for summary judgment on that part of its counterclaim. On Lamorak's appeal from the partial summary judgment, we find that Lamorak's policies bear the characteristics of primary insurance. Accordingly, we affirm the circuit court's judgment.

¶ 2      BACKGROUND

¶ 3      In May 2012, John Nichol filed a complaint charging Kone with negligently exposing Nichol to asbestos and causing him to contract malignant pleural mesothelioma. Nichol alleged that his exposure to asbestos took place between the early 1960s and the late 1980s, when Nichol worked for Kone or Kone's corporate predecessors. Kone provided notice of Nichol's claim to insurers who sold liability policies to Kone and predecessor corporations covering the years from 1961 through 1988. One of the insurers, Lamorak, agreed to defend Kone, subject to a full reservation of rights.

¶ 4      In November 2012, Lamorak filed the complaint that initiated the case now before us. Lamorak, in its complaint, asked the court to enter a judgment allocating the liability to Nichol amongst all insurers who sold policies to Kone. Lamorak named Liberty Mutual Insurance Company (Liberty), Kone, and others as defendants. Lamorak admitted that its corporate predecessors sold insurance policies to Kone's predecessors covering the period from June 30, 1971, to June 30, 1985. (We will refer to Kone and its predecessors as Kone and to Lamorak and its predecessors as Lamorak.) Lamorak admitted that the policies for 1971 to 1977 provided primary coverage, subject to a deductible. For the years 1977 to 1985, Lamorak sold Kone both umbrella policies and other policies, subject to SIRs. The parties agree that Lamorak's umbrella policies provided excess coverage that Kone cannot reach until it exhausts underlying coverages. The parties disagree about Lamorak's duties under the other policies, the policies at issue, which the umbrella policies listed as underlying coverage.

¶ 5    Lamorak alleged, and Kone admitted, that several persons other than Nichol also filed complaints against Kone, seeking compensation for injury or damage due to asbestos exposure. Lamorak sought a judgment declaring that the policies at issue imposed on Lamorak no duty to defend because Kone had not exhausted all of its primary insurance for the years 1961 through 1988. Lamorak contended that Liberty, as a primary insurer for part of that period, had prior responsibility for providing a defense and indemnity to Kone for Nichol's claim.

¶ 6    Kone filed an answer to Lamorak's complaint and a counterclaim. In count I of the counterclaim, Kone sought a judgment declaring that Lamorak had a duty to indemnify Kone for its liability to Nichol and the other persons who sued Kone. As one part of that relief, Kone prayed for a judgment declaring that the policies at issue count as primary insurance.

¶ 7    Liberty filed a motion for summary judgment on Kone's counterclaim, contending that the evidence in the record showed that the policies at issue provided primary coverage. The parties filed with the court copies of the policies Lamorak issued to Kone for the years 1971 to 1985. Kone and Liberty also filed other documents, with no affidavits or depositions explaining how they came to possess the documents. Kone alleged that it received two of the documents from Lamorak in response to discovery, and Liberty similarly alleged that it received one of the documents from Lamorak in discovery. Lamorak argued that Kone and Liberty failed to authenticate all of the documents, but Lamorak did not deny the allegations that it had produced the three documents in discovery.

¶ 8    The Lamorak policy for 1976 to 1977 (the last with a deductible and not a SIR) provides:

"4. *** In the event of an occurrence, written notice *** shall be given by or for the insured to the company *** as soon as practicable.

* * *

6. Other Insurance: The insurance afforded by this policy is primary insurance ***.

When both this insurance and other insurance apply to the loss on the same basis, *** the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a) Contribution by Equal Shares ***.

(b) Contribution by Limits. ***

* * *

I. Coverage A—Bodily Injury Liability ***

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of *** bodily injury *** to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury *** even if any of the allegations of the suit are groundless, false or fraudulent[,] and may make such investigation and settlement of any claim or suit as it deems expedient."

¶ 9    The policy set liability limits of $500,000 per occurrence and $500,000 aggregate, subject to a deductible of $25,000 per occurrence and $1 million aggregate. The policy does not specify a total premium, but it sets an estimated annual premium of $516,000.

¶ 10    The policy at issue for 1977-78 used the same form as the 1976-77 policy, including the same language in paragraphs 4 and 6 and section I, concerning the duty to give notice, the

effect of other insurance, and the duty to defend. However, the policy included a "Self-Insured Retention Endorsement" that modified several clauses. The endorsement provides:

"In consideration of the reduced premium for which this policy is issued, it is agreed that the company's obligation to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages and expenses in accordance with the insurance provided by this policy *** is in excess of the retained limit ***.

The company's right and duty to defend any suit against the insured *** shall apply solely as follows:

1. When the amount of all claims or suits seeking damages as a result of one occurrence does not exceed the retained limit, as estimated by the company, the company shall have the right but not the duty to make such investigations thereof as it deems necessary but the company shall have no obligation to defend ***.

2. When the amount of all claims or suits seeking damages as a result of one occurrence is in excess of the retained limit, as estimated by the company, the company shall have the right and duty to defend such claim or suit even if any of the allegations of the claim or suit are groundless, false or fraudulent[,] and may make such investigation and settlement of the claim or suit as it deems expedient."

¶ 11    The endorsement does not modify the duty to give notice of paragraph 4, but it expressly modified paragraph 6 as follows:

" 'Other insurance' is amended to read:

The insurance afforded by this policy is excess insurance, applicable excess of the retained limit, for the limit of liability stated in the declarations of this policy. When both this insurance and other insurance apply to loss on the same basis, the company shall not be liable under this policy for a greater proportion of the loss than stated in the applicable contribution provision below:

(1) Contribution by equal shares ***.

(2) Contribution by limits."

¶ 12    The policy sets liability limits of $2 million per occurrence and $2 million aggregate, subject to "retained limit[s]" of $100,000 per occurrence and $2 million aggregate. The policy sets its estimated premium at $1,085,000.

¶ 13    Also for the 1977-78 year, Kone purchased from Lamorak an umbrella policy, which provided:

"7. Notice of Occurrence. When an occurrence takes place which, in the opinion of the Insured, involves or may involve liability on the part of the company, prompt written notice shall be given by or on behalf of the Insured to the company ***.

* * *

12. Other Insurance. If any other valid and collectible insurance exists protecting the Insured against ultimate net loss covered by this policy *** this policy shall be null and void with respect to such loss ***; provided, however, if the amounts recoverable by the Insured under such other insurance are not sufficient to completely protect the Insured against such loss, this policy shall apply but only as excess insurance over such other valid and collectible insurance."

¶ 14    The policy set liability limits of $5 million per occurrence and $5 million aggregate, subject to the underlying Lamorak policy and the SIR. The umbrella policy set its premium at $187,500.

¶ 15    The circuit court found no need to consider any documents other than the insurance policies. The court entered a judgment declaring that the Lamorak policies at issue for 1977 to 1985 all served as primary insurance. The court added a finding, pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), of no just cause to delay enforcement or appeal from the declaratory judgment order. Lamorak filed a timely notice of appeal.

¶ 16                                    ANALYSIS

¶ 17                                    Jurisdiction

¶ 18    After the parties submitted their briefs on appeal, we questioned our jurisdiction and asked Lamorak why we should not dismiss the appeal. The circuit court's order did not dispose of any count of any complaint or counterclaim, and it did not finally determine the rights of any party to the case. The declaratory judgment resolved only an issue that formed a partial basis for the relief Kone sought, as Kone requested in its counterclaim a declaration that the 1977 to 1985 policies imposed on Lamorak a duty to defend and indemnify Kone, and the declaration that the policies count as primary insurance did not fully resolve that claim.

¶ 19    Lamorak argued that this court has jurisdiction under the reasoning of *In re Marriage of Best*, 228 Ill. 2d 107 (2008). In *Best*, the husband filed a petition for divorce, and in the divorce proceedings, he filed a motion for a judgment declaring that a valid premarital agreement limited the wife's property rights in the divorce proceeding. The circuit court entered a judgment finding the premarital agreement valid and added a finding of appealability. *Best*, 228 Ill. 2d at 110. Our supreme court held that the declaratory judgment finally resolved a separate part of the case. The court found that the husband had requested two distinct forms of relief: dissolution of the marriage and a judgment declaring the premarital agreement valid. The court said,

> "[The] declaratory judgment could be entered even if the dissolution petition were not granted. *** Under the facts and circumstances in this case, the request for dissolution of the parties' marriage and the request for declaratory judgment on the validity and interpretation of the premarital agreement are not so closely related that they must be deemed part of a single claim for relief." *Best*, 228 Ill. 2d at 115.

¶ 20    We find that the order here finally resolves a claim separate from the other claims for relief. The circuit court's declaratory judgment grants Kone and Liberty effective relief even if the court decides eventually to grant Lamorak the relief it seeks in its complaint. The declaratory judgment concerning the policies at issue could affect the liability of all insurers involved not only in this case, but also in all of the other cases involving claims against Kone for injury due to asbestos exposure. Accordingly, we find that Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) gives us jurisdiction to decide the appeal.

¶ 21                              Horizontal Exhaustion

¶ 22    The parties and the circuit court agree that *Kajima Construction Services, Inc. v. St. Paul Fire & Marine Insurance Co.*, 227 Ill. 2d 102 (2007), requires horizontal exhaustion under the circumstances of this case. The injury to Nichol occurred as a result of repeated exposure to

asbestos over a number of years. The insurance policies for all of those years provide some potentially relevant coverage. In *Kajima*, the parties agreed that "horizontal exhaustion requires an insured to exhaust all available primary limits before invoking excess coverage." *Kajima*, 227 Ill. 2d at 113. The *Kajima* court explained that

> "horizontal exhaustion is based on a recognition of the difference between primary and excess insurance. *** [W]hen excess insurance exists as part of an overall insurance package, it provides a secondary level of coverage to protect the insured where a judgment or settlement exceeds the primary policy's limits of liability. [Citation.] Excess insurance coverage attaches only after a predetermined amount of primary insurance or self-insured retention has been exhausted. [Citation.] Consequently, until the limits of primary insurance coverage are exhausted, secondary coverage does not provide any collectible insurance. [Citation.] Once an excess policy is triggered in a case, the limits of the primary insurance must be exhausted before the excess carrier will be required to contribute to a settlement or judgment." (Internal quotation marks omitted.) *Kajima*, 227 Ill. 2d at 114-15.

¶ 23　　　The parties here agree that the umbrella policies Lamorak issued to Kone for 1977 to 1985 count as excess insurance, and Lamorak owes nothing on those policies until Kone exhausts the limits of all applicable primary insurance. We must decide whether the Lamorak policies at issue count as excess policies or as primary policies. If the policies count as excess insurance, Lamorak will have no liability for 1977 to 1985 until Kone exhausts the policy limits for all of its primary policies covering the years each injured employee worked. If the Lamorak policies provide primary insurance, Lamorak's liability on those policies for 1977 to 1985 will fall on the same level as all other primary insurance. Because the circuit court decided the issue on a motion for summary judgment, we review the circuit court's ruling *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 24　　　　　　　　　　　　　　　　　Primary or Excess

¶ 25　　　Lamorak contends that the circuit court's judgment, that the policies at issue provide primary coverage, conflicts with the holding of *Missouri Pacific R.R. Co. v. International Insurance Co.*, 288 Ill. App. 3d 69 (1997). In *Missouri Pacific*, hundreds of Missouri Pacific employees sought damages for injuries resulting from asbestos exposure occurring over the course of many years. Missouri Pacific acknowledged that it purchased only excess insurance for the years at issue, and the policies referred to Missouri Pacific's SIR. *Missouri Pacific*, 288 Ill. App. 3d at 72. Missouri Pacific argued that SIRs did not count as " 'other insurance' " within the meaning of the excess policies. *Missouri Pacific*, 288 Ill. App. 3d at 74. The *Missouri Pacific* court rejected the argument and held that "Missouri Pacific must exhaust the SIRs before looking to the insurers for coverage. *** [T]he SIRs in the present case constitute primary coverage." *Missouri Pacific*, 288 Ill. App. 3d at 82.

¶ 26　　　Lamorak argues that *Missouri Pacific* stands for the proposition that SIRs always count as primary insurance and that any policy that refers to an underlying SIR counts as an excess policy for purposes of horizontal exhaustion. We do not read *Missouri Pacific* so broadly. The *Missouri Pacific* court specified that Missouri Pacific's SIRs counted as primary insurance, subject to horizontal exhaustion. The *Missouri Pacific* court did not restrict the freedom of others to enter into contracts that may provide for SIRs and insurance coverage with other effects.

- 6 -

¶ 27    Lamorak's argument that any policy that refers to a SIR must constitute an excess policy conflicts with insurance practice in Illinois. In *Roman Catholic Diocese of Joliet, Inc. v. Lee*, 292 Ill. App. 3d 447, 449 (1997), the plaintiff purchased primary insurance for 1985 to 1986, with a liability limit of $100,000 over a SIR of $100,000. The plaintiff also purchased an excess policy for the same period. Similarly, in *Rosalind Franklin University of Medicine & Science v. Lexington Insurance Co.*, 2014 IL App (1st) 113755, ¶ 20, the court noted, "[t]he primary policy issued by Lexington is a 'Healthcare Professional Services Liability Policy' (hereinafter, the Lexington Primary Policy), which contains a limit of $1 million per 'medical incident,' subject to a $100,000 self-insured retention." In *Travelers Indemnity Co. v. American Casualty Co.*, 337 Ill. App. 3d 435, 439 (2003), the court said that a "primary policy typically covers claims starting at the first dollar of loss or the first dollar in excess of a deductible or self-retention."

¶ 28    Thus, the reference to a SIR does not, in itself, resolve the question of whether the policy counts as an excess policy or a primary policy. An insured may bear the burden of a SIR and purchase a primary policy that refers to the underlying SIR. Illinois courts have discussed several characteristic distinctions between primary and excess policies. Excess policies

> "generally do not require immediate notice of an occurrence as do provisions in primary policies. [Citation.] Excess insurers are not interested in every accident, but only in those that may be serious enough to involve [them]. [Citation.] Since excess coverage is contingent on exhaustion of primary or underlying policies, excess insurers generally do not require notification of occurrences until the excess policy is reasonably likely to be implicated. [Citation.] Consequently, insurance policies for excess coverage generally grant the insured some discretion in evaluating the case." (Internal quotation marks omitted.) *American States Insurance Co. v. National Cycle, Inc.*, 260 Ill. App. 3d 299, 311 (1994).

"Primary insurance is coverage whereby liability attaches immediately upon the happening of the occurrence that gives rise to liability. [Citation.] Primary policies generally impose on the insurer a duty of defense separate from the duty to indemnify the insured against the claim. *** Rather than providing a duty to defend, most excess policies require the excess insurer to indemnify the insured for the costs of the defense as part of the 'ultimate net loss' against which the policy insures." *Krusinski Construction Co. v. Northbrook Property & Casualty Insurance Co.*, 326 Ill. App. 3d 210, 219 (2001). Excess insurers usually charge much smaller premiums than primary insurers. "[T]his disparity in premiums is indicative of the reduced risk assumed by the [excess] policy." *Illinois Emcasco Insurance Co. v. Continental Casualty Co.*, 139 Ill. App. 3d 130, 133 (1985). For primary policies that have deductibles or SIRs, as with excess policies, "liability attaches only after a predetermined amount of *** coverage has been exhausted. *** This reduced risk is reflected in the cost of the policy." *Whitehead v. Fleet Towing Co.*, 110 Ill. App. 3d 759, 764 (1982).

¶ 29    Here, the policies at issue establish that Kone had a duty to notify Lamorak of any occurrence, regardless of the amount of potential liability. The policies at issue impose on Lamorak a duty to defend if the liability appears likely to exceed the SIR. Notably, the policies do not give Kone discretion to decide whether liability will likely exceed the SIR. Lamorak reserved for itself that discretion. See *American States*, 260 Ill. App. 3d at 311. Finally, the premiums for the policies at issue greatly exceed the premiums for the contemporaneous umbrella policies, which covered much greater dollar amounts of liability for a wider group of

risks. The three most notable characteristics of primary insurance all indicate that the policies at issue constitute primary insurance.

¶ 30       Lamorak relies heavily on the policy language that expressly makes the policies "excess insurance, applicable excess of the retained limit." The policies also state that "[i]n consideration of the reduced premium for which this policy is issued, it is agreed that the company's obligation to pay *** is in excess of the retained limit." Insofar as that language introduces some ambiguity into interpretation of the policies, we may look to the documents the parties presented to resolve the ambiguity. See *Benedict v. Federal Kemper Life Assurance Co.*, 325 Ill. App. 3d 820, 824 (2001).

¶ 31       Kone appended to its motion for summary judgment several documents bearing legends that indicate creation in 1977. Kone presented no affidavits, depositions, or other evidence to explain how it obtained the documents. In its brief, Kone asserted that the documents were "produced by the parties in discovery," but Kone did not say which parties produced which documents, except that Kone identified two charts as coming from Lamorak. Liberty also asserted in its brief that one document appended to the motion came from Lamorak in discovery. Lamorak objected that the documents appended to the motions lacked proper authentication, but it did not deny the assertion that it had produced the three documents in discovery.

¶ 32       Rule 803(16) of the Illinois Rules of Evidence (Ill. R. Evid. 803(16) (eff. Apr. 26, 2012)) provides that the hearsay rule does not require exclusion of "[s]tatements in a document in existence 20 years or more the authenticity of which is established." Rule 901(a) of the Illinois Rules of Evidence (Ill. R. Evid. 901(a) (eff. Jan. 1, 2011)) provides, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." For an allegedly ancient document, the rule requires evidence that the document "(A) is in such condition as to create no suspicion concerning its authenticity, (B) was in a place where it, if authentic, would likely be, and (C) has been in existence 20 years or more at the time it is offered." Ill. R. Evid. 901(b)(8) (eff. Jan. 1, 2011). Kone and Liberty presented no affidavits or testimony to support findings about when or how they found most of the documents they appended to their motion for summary judgment. The presence of "1977" on a sheet of paper does not suffice to make a document self-authenticating. See Ill. R. Evid. 902 (eff. Jan. 1, 2011). We ignore the documents that lack authentication.

¶ 33       But Kone and Liberty asserted that Lamorak produced three of the documents in discovery, and Lamorak has not disputed that assertion. When Illinois courts interpret the rules of evidence, the courts may look to federal cases for guidance. *People v. Thompson*, 2016 IL 118667, ¶ 40. In *Architectural Iron Workers Local No. 63 Welfare Fund v. United Contractors, Inc.*, 46 F. Supp. 2d 769, 771 (N.D. Ill. 1999), the plaintiff filed many exhibits and the defendant objected that several specific exhibits were "inadmissible because they [were] unsupported by affidavit or deposition testimony." The plaintiff asserted that some of the specified exhibits "were all produced during the course of the litigation in response to Plaintiffs' requests for documents." *Architectural Iron Workers*, 46 F. Supp. 2d at 772. The *Architectural Iron Workers* court held that "documents produced in response to discovery are self-authenticating. *** [T]here is no error to admit as evidence documents that Defendants themselves possess and produced in response to Plaintiff's requests for production of documents." *Architectural Iron Workers*, 46 F. Supp. 2d at 772.

¶ 34 Because Lamorak had an opportunity to determine whether it produced the contested documents in discovery, and it did not deny that it produced those documents, we find sufficient authentication for the three documents Liberty and Kone asserted that they received from Lamorak in discovery.

¶ 35 The first document so authenticated is a private wire, dated June 29, 1977, from an insurance agent to the Kone employee responsible for risk coverage. The agent stated that Lamorak was "binding the primary general liability program using the *** SIR." The document supports the inference that the agent and Kone believed Lamorak had agreed to issue primary insurance subject to a SIR. The two charts from Lamorak show Kone's coverage for 1973 through 1985. Both charts identify the Lamorak policies by number and specify that the policies at issue count as "Primary."

¶ 36 All the relevant indicators show that the policies at issue provide primary coverage. Insofar as the language of the policies might introduce some ambiguity, contemporaneous documents show that the parties understood that the policies at issue provided primary insurance. We hold that the policies at issue provided primary insurance coverage.

¶ 37                                    CONCLUSION

¶ 38 Insurance policies Lamorak issued to Kone for 1977 to 1985 imposed on Kone a duty to notify Lamorak of every occurrence, regardless of whether potential liability exceeded Kone's SIR, and the policies established Lamorak's duty to defend claims that appeared likely to exceed the SIR. The policies also had premiums far greater than the premiums for the umbrella policies Lamorak issued to Kone for the same years. Contemporary documents show that Lamorak and Kone understood that the policies at issue provided primary insurance subject to a SIR. Accordingly, we affirm the circuit court's judgment declaring that the policies at issue provided primary insurance coverage to Kone.

¶ 39 Affirmed.